Your Honor, this is the case on the docket 2-UT-0067, Edward A. Fiala v. Bickford Senior Living Group, Plaintiff Appellant, the Bickford Senior Living Group, and Dr. Whoopi M. Mead, defendant, Appellees. Arguing on behalf of Plaintiff Appellant, Attorney Mr. Bradley A. Skate, arguing on behalf of the defendant, Appellees, Mr. Robert Larson. Mr. Skatefish? Yes. You may proceed. Thank you. May it please the court, opposing counsel, courtroom staff, as you know, my name is Brad Skatefish. I'll be arguing on behalf of the appellant, Edward M. Fiala. What we have here is a case where the court erred in dismissing counts 9 and 10, as well as the prayer for punitive damages in the plaintiff's second amended complaint, and that is the pleading that's before the court today. As far as a brief recitation of some of the relevant facts, which I'm sure you're aware from the briefs, the plaintiff, Edward Fiala, is a former retired judge who is suffering from Lewy Body Dementia. His chart gave his children the power of attorney and required consent before any medications were to be used on him. This is while he was a residential or a resident of the Bickford Nursing Home Facility. His chart specifically prohibited Paxil from being used on him. It's been alleged that the Bickford staff viewed the plaintiff as a burdensome patient or resident, and that on occasions they would separate him from his wife, another resident, put him in a separate area they called Mary B's, and at that time administer chemical restraints to reduce him to a less burdensome or catatonic state, including Paxil. Dr. Naveed comes into this case because she authorized a prescription without ever having met or treated the plaintiff. We have alleged a complete lack of consent, leading to a medical battery case. And that's how you distinguish Holts-Richter? Absolutely. We believe the Holts-Richter case not only can be distinguished but also used to support our claim. There are three cases primarily that are important on the issue of the medical battery, the Cohen case, the Holts-Richter case, and the McDonald case, as well as some of the ones they cite. The Cohen case stands for the proposition that it is unnecessary to obtain the Rule 2622 affidavit in a medical battery case. And it's important, and you'll hear me come back to it, but in this case what we've alleged is not a breach of the standard of care in the healing arts community, but rather a complete lack of consent for the treatment whatsoever, in this case the prescription administration of medication. In the Cohen case, that case the court found that the 622 affidavit was not necessary because the case concerned a complete lack of consent. The plaintiff went in to give birth, and it was determined that she would need a C-section. She explained to the medical personnel that her religious beliefs prohibited her from being seen completely naked by another man. She was promised that her religious beliefs would be upheld. She came to find out later that while she was unconscious, a male nurse was in the room while she was completely naked and did have physical contact with her body. She brought her case on the basis of the complete lack of consent to that type of treatment. What's important there is the court didn't have to get to whether that form of treatment was appropriate or within the standard of care in the performing of the cesarean section, but rather whether there was consent for that treatment whatsoever. The Holzrichter and McDonald cases, which we mentioned and are relied upon by the appellee in this case, as I said, they're distinguishable, but they also support aspects of our argument. There are a couple of cases where the Oldham courts have applied Rule 2622 to claims that might fall generally under the heading of medical battery, but the difference there is that the scope of treatment was in question as to whether it was and the issue was beyond the can of the layperson, as the courts wrote in those cases. There were issues that involved medical judgment, and thus we need medical testimony from an expert to distinguish whether or not the treatment itself went beyond what was allowable. In the Holzrichter case itself, the plaintiff clearly consented to a procedure and clearly wanted to have a procedure done. The issue was whether the procedure as done went beyond the consent given. That's why the Holzrichter court pointed to a three-part test saying to make a claim for medical battery, the plaintiff would have to show one of the following, no consent to the procedure, the procedure was contrary to the injured party's will, or that there was a substantial variance in the procedure as performed from the consent granted. Because this patient consented to the doctor performing surgery and consented to the general type of procedure, he really couldn't go with elements one or two. He had to go into a theory that there was a substantial variance, and in that case what was being done was called a Z-scarf osteotomy, which ultimately involved the cutting of tendons, and there was an argument by the plaintiff as to whether he was informed and it was necessary to have those tendons cut to perform the procedure. Obviously, that's something where a layperson can't weigh in and know whether a person who agrees to undergo a Z-scarf osteotomy has agreed to have their tendons cut or not. It takes expert medical testimony to say what the consent was given and whether this went beyond the consent. But even the Holzrichter court stated, based on the facts of each case, an expert opinion may not always be necessary. Similarly, in the McDonald case, the issue was whether the use of a certain catheter device that the plaintiff was unaware of was appropriate when she agreed to an epidural injection procedure. Again, she agreed to a procedure being done, but she argued that this went beyond the consent. The McDonald court followed Holzrichter and came down a similar way, that this was an issue where you needed medical testimony because the medical judgment of the person not performing the procedure came into play. It wasn't about total lack of consent. Within the McDonald case, there's a reference to another illustrative case, the Gragg v. Calandra case. We talk about it in the reply. In that case, the plaintiff alleged a medical battery against the hospital, a doctor for administering procedures on his father, including a heart surgery and continuation of life support. We find this very analogous because in that case, the argument by the defense would be he needed the heart surgery, he needed the continuing life support, or he was going to die. However, in Illinois, as well as the rest of the nation, patients do not have to undergo procedures they don't want to undergo. Did the trial court give a rationale for why an expert's affidavit wasn't necessary? Yes, they did, because the plaintiff wasn't alleging a deviation from the standard of care, but rather a complete lack of consent for the surgery and treatment. Was there a rationale that the trial court gave for the absence of the case for lack of an affidavit? I believe the trial court in Gragg found that this did implicate medical judgment in our own case. Yes, the trial court in Fiala matter believed that to some extent medical judgment or expertise was touched upon in determining whether the treatment was appropriate, which we believe was clear error because it's not the theory of recovery that was pled or that would ever be argued in this case. The issue is not whether Paxil or any other medications were appropriate in the treatment of Lewy body dementia as suffered by Mr. Fiala, but whether there was consent to any treatment. And I think it's important to separate Dr. Naveed, the defendant who is the appellee in this case, from Bickford. It may be argued that Bickford was given a certain amount of consent to provide the nursing home residential care in arguably the way that they found best, but that doesn't mean that any consent was given for Dr. Naveed to treat this patient that she had never seen or consulted with. Your position is you have to separate your theory of recovery from the issue of damages. Correct. Right. I'm sorry? You're going to have to have an expert witness for that purpose anyway. Right. But that's the only difference. This was dismissed on the pleadings as to the cause of action, not as to damages. I agree that eventually an expert would be necessitated for that purpose. But shouldn't there, you know, 622, shouldn't it be brought in for purposes of evaluating whether or not a claim is meritorious where there's potentially no damages? No, I think that 622 is already a deviation from the normal rule that a plaintiff is not required to lay out expert testimony just to pass the simple threshold of the pleadings, and that that would place an undue burden on plaintiffs in cases where it really doesn't get down to something where the simple threshold has to do with expert testimony. It would corrode the purpose of 622 by requiring it in cases where you have, as here, a simple lack of consent as opposed to something where a layperson can't understand the medical testimony. I think your average layperson can understand the difference between I consented to this and I didn't. And they can look at the evidence and find out, did you really consent or not? That's how they can weigh the facts on that. Whereas a layperson really can't get into, was this appropriate medical treatment for Lewy body dementia or disease scarf osteotomy or whatever without somebody weighing in from a medical perspective. I want to make sure I touch on all the points that come up here. The next issue that was argued was this based upon nominal damages, in which case an expert would obviously not be necessary, or were you seeking compensatory damages where an expert might be necessary? I think we would seek both nominal and compensatory damages. I think at the bare minimum, nominal damages would be appropriate in that the family members could testify that this man who was in a failing state of health and was given comfort by being kept around his wife and being able to interact with her and other members of the community at Bickford lost whatever little quality of life he had by being reduced to a catatonic state and placed in an area where he had no interaction with loved ones or anybody else for periods of time. However, we would also hope to get to the point where expert testimony could be used to get to something beyond what's being termed nominal damages. She didn't file a loss of consortium issue. No, she did not. On the damages issue, though, the next thing that was going to be argued is there is a prayer for relief for punitive damages. And at the simplest, obviously, it's part of Count 9. The arguments already made to Count 9 need to be applied for the prayer for relief to even remain. But we completely disagree with the appellee's characterization that was apparently accepted by the court regarding 2604.1. Simply reading the black letter of the statute, it says, in all actions on account of bodily injury or physical damage to property based on negligence or product liability based on any theory or doctrine, et cetera. You are not permitted to file a complaint containing the prayer for relief seeking punitive damage until you have adhered. Well, this is not a case for bodily injury or physical damage to property based on negligence. There's no negligence claim. It's not a product liability case of any type. It simply does not fall under 2604.1. We cited the Voiles case, which interpreted it and held that, in this case, the plaintiff has pleaded and proven to defend the law. I'm sorry. Voiles was overturned on other grounds. It was overturned because the plaintiff failed to meet the pleading requirements for interference with economic advantage. So in our review, we believe that the concept of law there still stands. It's never been overturned or abrogated by anything else. So if the court doesn't accept Voiles, there's the Wegman case, which stated that battery is an intentional tort. It is undisputed that the plaintiff in this case has alleged battery, and under the circumstances, trial court erred in striking the prayer for punitive damages. Can you talk to the lack of relationship between the defendant and the doctor? How does that support an inference of conspiracy? That's a good question. That's what we get onto in the final count. The plaintiff would have had no contact with this doctor but for Bickford seeking out Dr. Naveed's prescription. Bickford knew it was against the chart. The doctor either knew that or was willfully unaware of what was specified in the chart. The doctor knew at the bare minimum that she had never treated with this plaintiff, that a prescription was called in in the middle of the night as was alleged in our complaint and must be accepted as true for purposes of this review. And under the elements of civil conspiracy, as pled under Fritz v. Johnson, you were required to show a combination of two or more persons for the purpose of accomplishing some concerted act, an unlawful purpose or a lawful purpose by unlawful means, and that acts are done in furtherance by one of the conspirators. The Fritz elements here are satisfied. The pleadings, I won't go through all of them. You have the documents. But we've argued a lot of it admittedly is circumstantial evidence, but the cases are clear that circumstantial evidence is appropriate, that often the existence of a conspiracy can only be proven by circumstantial evidence. As the Scott v. Alden case said, conspiracies are purposefully shrouded in mystery, so a plaintiff is not expected to know all details at the pleading stage. The point of conspiring against someone is to do something secretively. They can't be expected to know every single detail before even undertaking a single deposition and being able to look into the matter further. Some things have to be proven by inference, reasonable inference from the facts that are proven. The Fritz case itself had to do with a state employee arguing that his boss and others conspired to force him out of a job, and the court accepted the reasonable inference that because multiple people came out with statements against him at a contemporaneous time, you could draw the inference that they must have met secretively and decided to do this at the same time. They were not independent actions. Here, I think a similar inference would be when you've got Bickford alleged to be acting to restrain a burdensome resident and a doctor who's never seen that resident, who's never been a treating physician, called upon in the middle of the night to prescribe medications that will then help accomplish that means. For monetary gain, I think it's at the very least a reasonable inference that they were working in concert to achieve this end of keeping the person restrained for the mutual benefit of the two co-conspirators. Several cases even touch on the fact that when you've got one of these scenarios where a plaintiff can't know everything, they still should be allowed to get past the pleading stage. Maybe it becomes an issue for summary judgment in the future, if not enough can be teased out of discovery. But citing the Stapp case, may I finish the thought? Stapp says the consideration should be given to the plaintiff at the pleading stage before discovery when he has no means of getting more information, and Allen v. Peoria says that it may be error to deny discovery before ruling on a motion to dismiss when the facts are exclusively within the knowledge of the defendant. For those foregoing reasons, we believe it's clear that the circuit court erred in dismissing counts 9 and 10. Thank you. Mr. Larson. Thank you, Your Honor. Good morning, Justices. Good morning. May it please the Court. This case, there are a couple of important factors to consider here, and I think the specific facts of this case are important. And Justice Burkett cited the Holst-Richter case. I think there's an important quote from that case that we need to keep in mind. A plaintiff challenging an implicit part of the medical treatment should not be able to avoid the requirement of an expert medical opinion simply by claiming medical battery or something other than medical malpractice. Plaintiff pled medical malpractice against Dr. DeVete, and when it didn't work, they tried to switch the facts and strategically eliminate some facts from the allegations to try to turn this case into a medical battery case and a conspiracy case. With respect to this conspiracy case, by the way, there is no unlawful act or lawful act by unlawful means even alleged here. Plaintiff tries to bootstrap in the Nursing Home Care Act, which, as the Court is well aware, doesn't apply to individual physicians. And the cases say that in a circumstance where the individual physician could not have been responsible or have committed an unlawful act because the act does not apply to them, they cannot conspire to commit a crime that they couldn't commit themselves. And so Plaintiff is now trying to say, well, we'll just allege... What crime is it that they couldn't commit themselves? Dr. DeVete cannot violate the Nursing Home Care Act because... If he participates in a conspiracy to violate the Nursing Home Care Act, how is he not assisting in a conspiracy? But that's the whole point of the argument. In a violation of the Nursing Home Care Act. If he participates in a violation of that statute, then he's a co-conspirator, even if he could not be individually held liable. Actually, the case law says the exact opposite. The case law, and I don't remember the case I specifically cited, but it says that in a circumstance where the individual could not be held accountable under that act, they cannot conspire to violate a statute that doesn't apply to them. It's the nature of a conspiracy that you have to... What case is that? It's cited in my brief, Your Honor. A more basic question is, our standard of review, can you explain why you say a motion to dismiss under 2619 is reviewed for abuse of discretion without explaining why? It is reviewed for an abuse of discretion in those circumstances where the party has already had more than one bite at the apple and is denied the opportunity to re-plead the complaint. So because the trial court found that dismissing the case with prejudice, without the need to re-plead after the Second Amendment complaint was filed, that circumstance of choosing not only to strike and dismiss the Second Amendment complaint but denying the need to file a Third Amendment complaint, dismissing it with prejudice, that aspect of the decision is reviewed under an abuse of discretion standard. That aspect. Yes, sir. So getting back for a moment to the civil conspiracy issue, the facts here just simply don't support that. Counsel on the one hand wants to argue the party's conspired. We don't know the relationship. There's no allegations. Counsel, I'm confused. You keep saying these facts. Was there a trial? I'm talking about the facts as it lives in the complaint, Your Honor. Okay. That's what I thought was pertinent, is what the facts are that were alleged in the complaint. Absolutely, Your Honor. And whether we refer to them as allegations or facts. The allegations in the complaint were that there's no allegation in the complaint that Dr. DeVete ever knew of any of these restrictions. There's no allegation in the complaint that Dr. DeVete and any member of the Well, that's an inference that, you know, can be drawn, as counsel argued. In most conspiracies, you have facts. You don't have an admission that the parties are agreeing to violate the law. You have inferences that can be drawn from the facts. As pled, why can't there be a reasonable inference that a doctor would look at the chart and would be aware of the fact that there was no consent? Actually, Your Honor, the facts as pled in the complaint suggest the exact opposite, that Dr. DeVete never had access to the chart, never met the patient, and there's no allegation that Dr. DeVete ever spoke with anybody. But if you make the inference, then if none of those things happened, and yet she wrote the prescription, the inference is there. Well, I don't know what the inference is that the court would be referring to, that somehow there was some secret conversation, let's write a prescription and chemically restrain this person. There's no allegation. She's doing it at the request of the co-conspirator and not based upon some medical expertise or reason, justifiable reasons as to why she would decide that this particular patient, after consulting with the patient, or at least if the patient serves, would reasonably conclude that he was in need of this particular medication. Well, and that's where the case law in civil conspiracy says it's not enough to just call it conspiracy. There has to be some substantive basis for it. There's no allegation as to what relationship, if any, existed between the parties, although counsel certainly had access to that information if they wanted to plead it. There's no allegation pled as to when any conversation ever took place. We're at the pleading stage. This is not the trial. I understand. The allegation is, and plaintiff is maintaining, you can draw a reasonable inference that a doctor would be aware of whether or not there was a consent and what was the scope of the consent. Most medical doctors would inquire as to whether or not there's consent for this prescription or whether or not it's within the scope of the consent given. This is a complaint with hundreds of paragraphs of allegations. It would have been a simple matter to simply allege that. Doctor indeed knew that the plaintiff didn't consent. One sentence. They know that's not true, so they haven't alleged it. That's not an inference that needs to be drawn. That's a very simple fact. When you say they know that's not true, they don't know much at all because there's been no discovery yet. There's been no discovery, correct? That's correct, Your Honor. We're still at the pleading stage. Nor did counsel request discovery to support the complaint. But the fact of the matter is that would be a simple, reasonable inference. It seems to me that what you're saying, at best, Doctor DeVete, under any circumstance, was negligent. That seems to be your argument. That's part of the argument. Yes, it is. And, in fact, they allege in count nine. Shouldn't it be for a jury to decide or for the trial court after discovery has been completed for a summary judgment to decide the issue of whether the doctor was negligent or whether that was the only allegation? Well, whether or not there's support in the record, which will be developed with discovery, for the conspiracy count. The conspiracy count needs to set forth at least enough facts. Or for the medical battery count. And the medical battery count, if the medical battery count is alleging medical negligence, it has to be supported with a 262. But it doesn't allege medical negligence. It alleges that he or that the doctor, DeVete, wrote the prescription without any consent. It also says, and this is paragraph 101 of the complaint, that Doctor DeVete's course of action in prescribing and facilitating the administration of medications of plaintiff as described above was committed with actual malice, deliberate violence, and or with such gross negligence as to indicate a wanton disregard of plaintiff's rights. By inserting that language, counsel has gone beyond a simple medical battery. A medical battery could have been put very simply as follows. Are you suggesting that that makes it a medical malpractice case? I think it does. Why? It's a failure to have consent as opposed to a deviation from the standard of care. A battery, the issue of consent in a battery case is either it was or it wasn't. The gross negligence necessarily implicates a question as to what Doctor DeVete needed to inquire into. And that raises the question of what the appropriate conduct by the physician is. Do you know what your client did inquire about? It isn't alleged, so without going beyond that. Again, isn't there the inference to be drawn to the contrary, that the doctor didn't inquire about anything? He simply wrote a prescription. And if that's the case, that raises the issue of whether or not that is appropriate behavior for a physician under the circumstances, which is different from the issue of simple lack of consent. They can't have their cake and eat it. Is that the type of allegation that's beyond the kind of an average juror to evaluate whether or not a doctor in that position should write a script? I think it is. I think if all they pled was he didn't consent and the doctor wrote something he didn't consent to, that would be, you could say, all right, it's either consent or it's not. But they're alleging that Doctor DeVete was grossly negligent. And the reasonable implication of that is because he didn't or she didn't take some action to find out what was in the medical records. That necessarily raises the issue of what a reasonable doctor would do in inquiring into those circumstances, because the average juror doesn't know about the relationship between the medical records. But isn't the point here that there was no consent for the prescription, not that the prescription was inherently bad for this patient? That's one part of the allegations. But isn't that enough to survive the motion to dismiss? I mean, again, we're not talking about summary judgment. This is not a trial review post findings. I understand that, Your Honor. If that was the limit of what was alleged, I would agree with you. That's not the limit of what was alleged. They've gone beyond the simple allegation of there was no consent, something that happened wasn't consented to. They've gone beyond that. And as soon as you go beyond that, cases such as Holtz-Richter and McDonald say, if you're not talking about the scope of the consent. No, no. I just don't see where this bleeds into the scope of the consent. If as soon as counsel raises issues such as gross negligence, that goes beyond the issue. Negligence has nothing to do with whether or not there was consent. A medical battery either did or did not happen. Right. And we, I think, sort of agree here. There was no, the chart clearly said there was absolutely no consent to give this particular medication. Correct? That's the allegation. Yeah. And the medication was given. How does that become anything other than an issue of consent? Because of the way it was played. If counsel had said nothing other than. So if we just X out that word gross negligence, then it's fine. Well, if plaintiff wants to change. Is that your point? Is that what you're hanging your hat on, those two words? Well, there's certainly more than that, but that's an important part of it. And counsel is trying to, as I indicated earlier, sort of do an end around, first of all, the Nursing Home Care Act by saying, well, all we have to do is allege a civil conspiracy, and now every doctor who would otherwise not be susceptible to the Nursing Home Care Act, we're going to drag them all in by just alleging civil conspiracy. And that way, all that case law that talks about doctors not being the intended targets of the Nursing Home Care Act, that goes away. And then on the medical battery count, we won't talk about the specifics of the relationship or anything that happened between Dr. Naveed and the facility. We'll just make this allegation, but we'll throw in gross negligence in case we can't establish what the doctor knew or didn't know, and then we'll kind of argue about her negligence during the case. You can't have both of those things. Okay. When someone commits a battery, when they assault somebody or touch somebody or hurt somebody, whether or not punitive damages for the acts are appropriate, whether compensatory damages are appropriate, whether nominal damages are typically appropriate depends on the facts in the case. And so a reasonable person could look at these facts and say, this particular doctor prescribed something to someone who specifically indicated to the caregiver that this particular type of care was not supposed to be given. And the doctor didn't even spend the time to ask, let alone look at the charts. I'm looking at this as different alternatives. And one alternative could have been that your doctor could have asked the co-conspirator, what did the charts say? And if the co-conspirator said, he wants Paxil, he loves Paxil, he thinks it's, you know, he drinks it, you know, in the morning in his orange juice, then maybe I might buy the argument that your client was a dupe instead of a co-conspirator. But your argument goes to whether or not, goes to the level and degree of the egregiousness of the battery. And to argue that it's negligent is one way of saying that this person intentionally did these things, far beyond the norms of what a doctor should do. Now, the pleadings are almost being kind to your client by saying that she didn't do this intentionally, that she didn't disregard. For all we know, the co-conspirator could have said, well, the charts say that he's not supposed to take it. What are you going to do? And she does it anyway. So this is a non-starter, I think, because what you're really arguing is semantics and not, as my colleagues have said, at this stage of the proceeding, this really is not relevant or material. If I may address that point, Your Honor, I think, respectfully, I disagree. And I think as soon as the issue of the conduct of the defendant beyond whether or not there was a consent given comes into play as part of the evidence in the case, that necessarily implicates the appropriateness of the conduct by the physician, which is the whole purpose behind 2622. By seeking punitive damages and by alleging gross negligence, a jury doesn't have the knowledge to understand the relationship between the medical director of a facility like Bickford and its staff and how these calls take place and what's the ordinary circumstance under which a prescription is given in the middle of the night for a patient who becomes disrupted. Is it fair to apply an allegation from a conspiracy count to the medical battery count? Is that fair? I think it is in the context of this case where, again, talking about Holstrichter, where the plaintiff had opportunities and originally separated out those allegations and had allegations of negligence in the first amendment complaint. And then it got stricken, and so they kind of got separated out to try to do an end-around on the obligation to add a 2622 report. And so taking the complaint as a whole, plaintiff is alleging more than simply lack of consent here. Plaintiff will presumably try to prove during the course of the trial of this cause more than simply, I didn't consent and something I didn't consent to happened. Keep in mind that Dr. Navid never actually was the person who did the touching. He never was. Dr. Navid never met. Correct. So there's no touching that was done by Dr. Navid. It was a consultation regarding the medical prescription. Now, whether or not a doctor could come in at trial and say, you never give that prescription without inquiring as to what's in the medical records, you should never do that without personally evaluating the patient, that's negligent to do so. That's inappropriate to do so. Those are all things beyond the Kennedy average juror and require medical expert testimony. But how does that matter if the issue is under no circumstances does the patient ever want this prescription given? Why does all that other even color the complaint? Because it's in the complaint. Okay. We're going to disagree to disagree on that. Well, and if I could, Your Honor, the point of that is if they're allowed to go beyond the simple consent and avoid 2622, but then be able to go to trial and argue these things about negligence, that defeats the purpose of 2622. If this Court were to say – You made that argument before I was paying attention. Okay. And if the Court were to say, fine, then the plaintiff is barred from any theory beyond pure lack of consent. There cannot be any negligence argued gross or otherwise at any point in this trial because there's lack of 2622 compliance. That would be a different issue. You know, we're talking about mental states and the degree of knowledge that the doctor had. And that ordinarily, and it's pled as medical battery and a conspiracy, those are fact questions that are usually resolved at trial. What was the degree of the doctor's knowledge? Was it a knowing act? Was it reckless? Was it gross negligence? Or was it simple negligence? And that will be decided after trial, ordinarily, correct? The facts, presumably, would require expert testimony to establish that. To establish that there was no consent? An expert is required to establish that there was no consent? Well, you also indicated medical negligence, simple negligence. My question is, the purpose of 622 is to prevent frivolous lawsuits and it's to be liberally construed to allow claims to go forward in cases where a certificate or a 622 statement from another physician is not required. That's the issue. What is beyond the kind of an average juror as to whether or not there is a consent for a prescription? What's beyond the kind of an average juror to decide whether or not there was consent? I understand and all I can do is repeat that I think the complaint goes beyond that as you indicated and that's why I think it's relevant. Well, there was a conversation between Justice Burkett and you, Mr. Larson, and you said, I believe you said that Justice Burkett said medical negligence and he never said medical negligence. He said negligence. And so in this particular case, there are two aspects of negligence. There's negligence called medical malpractice and there's negligence that everybody every day does. The fact that a doctor goes through a stop sign and hits somebody is not medical malpractice, even if he's on his way to the emergency room because he got a phone call. So I think part of the problem here is we're looking at this in part as negligence and not necessarily as medical malpractice. And the affidavit, we believe, I think if I can speak on behalf of my colleagues, the affidavit that is required relates to medical malpractice or medical negligence. It doesn't relate to layman negligence or negligence that everybody is required to abide by. You know, Paul's Grab versus Long Island Railroad. And so in that regard, the 619 motion and the lack of an affidavit doesn't really address, as Justice Jorgensen keeps pointing out, there's a lack of consent here. What else do we have to deal with? Your time is up. Thank you. Thank you. Is it scaphish or scaphish? No, it's scaphish. I figured it probably was. People usually use a long vowel for their names. It's easier to pronounce. I'm no exception, I guess. Just a few comments in rebuttal. One of the last things counsel tried to make a point of was that there was no actual touching by Dr. Naveed of the plaintiff in this case. I would just point out in our brief we even recited the holding from the Gaskin versus Goldwasser case where they say it's not necessary that contact be directly caused by the defendant. It's only necessary that the defendant intended to cause directly or indirectly for the plaintiff to come into contact with some foreign substance which they will reasonably regard as offensive, which is exactly the scenario we have here. Going back to one of counsel's early points, he argued that the plaintiff has attempted to avoid 2622 requirements by claiming this is a medical battery. He went on to say that we've somehow strategically changed our cause of action. One, I disagree with the characterization. Two, it doesn't matter because as is pointed out in our reply brief, this is the only pleading before the court, this particular pleading. It doesn't matter what was alleged in earlier pleadings, whether we changed course, made minor tweaks, or wholly took a different course. What's before the court is the pleading that led to these dismissals that have been appealed. And what is our standard of review? Your standard of review is absolutely the de novo standard. I was going to get onto that. Counsel argues in his response that it's the abuse of discretion standard. He cites a case called Muirfield, but in that case the plaintiff was disallowed from filing a fourth amended complaint. And the appeal, or at least one aspect of it was brought on that issue. Did the court abuse its discretion in denying the plaintiff one more bite at the apple, another amended pleading? We have not raised that as an issue. The issue here is... You haven't asked for another bite at the apple. Right. And it's, whether we had or not, it's not a subject of appeal. As a factual matter, we moved on to the appellate stage, but there was not a request that was denied to file a third amended complaint, and that is not the subject of any appeal here. Can you comment on the defendant's point that we should not let your characterization of a claim control how it's viewed? With regard to 622. Yes. I believe the cases say exactly the opposite. I'm looking for my citation here, and so far I haven't found it. But we actually argue in our brief that it's not the defenses raised, but the cause of action pled by the plaintiff that controls. And I think the pleading is overly clear that what's sought here is medical battery, not medical malpractice. Counsel kept coming back to... In order to recover, you're going to have to have expert testimony to show the interaction of Paxil with your client's condition, correct? But that's medical. That's expert testimony on a different issue. It's not the 622 requirement. It's not damages. It's a pleading threshold. That would come later on. If he moved for summary judging because all of our witnesses have been disclosed and we had failed to do that, that might be a different issue, but we're not there. As to counsel's argument about the pleading raising, what he does is gross negligence, even though I don't think those are the terms used. Again, he's getting back to a semantics issue. I think the panel correctly understood that that reference was to the doctor failing to find out if there was any consent, to consult the chart to find out what this patient was willing to administer at all, not the treatment itself. And to use Justice Jorgenson's phrase, I like what she said, couldn't we just X out those words? Essentially, if you find that there's something unnecessary or barking up the wrong tree about that one particular paragraph that counsel kept coming back to, yes, you can essentially exit out. We talk about on page 12 of the reply in the In re Lipchick estate case, I think this is down in the footnotes, that if there is an aspect of a complaint that is inconsistent, it can be simply disregarded as surpluses. You don't look to the allegations that don't help the overall body to determine whether it meets a pleading threshold. You can throw those out and see if the rest of the allegations are consistent in pleading a cause of action. I think those are all the points. Let me ask you this. Is the failure to look at the chart or to learn whether or not there was consent, is that common negligence or is that a medical malpractice claim? Well, I guess, you know, specifically we're not characterizing it as either. We're talking, we're characterizing it as a medical battery. But, yes, that would be common negligence because it's not, as the court said, it's a negligence that we're in every day. You would not need expert testimony to prove that. That's within, to quote Justice Burkett, within the kind of the average juror. Yes, I think anybody who's ever consulted with a doctor would have the understanding that they wouldn't like the idea of a doctor prescribing medications to them and then having them administer while they're unconscious against their will. But that is different than whether or not that is a medically appropriate treatment for that condition. Thank you. Your time is up. We have other cases on the call. Thank you very much.